907 A.2d 494

Elsie R. BROUSSARD, M.D.

v.

ZONING BOARD OF ADJUSTMENT
OF the CITY OF PITTSBURGH

The Twentieth Century Club, City of Pittsburgh, MedCano Corporation, Schenley Farms Civic Association, Gregory Snow, Patricia M. Moore, Jack L. Paradise, Mary Paradise, H. Richard Howland, Veronica Wojnaroski, Andrew McSwigan, Melissa McSwigan, Carol Kowall, and Mary A. McDonough, Intervenors

Appeal of Schenley Farms Civic Association, Gregory Snow, Patricia M. Moore, Jack L. Paradise, Mary Paradise, H. Richard Howland, Veronica Wojnaroski, Andrew McSwigan, Melissa McSwigan, Carol Kowall, and Mary A. McDonough.

Supreme Court of Pennsylvania.

Argued Sept. 22, 2004.

Decided Oct. 4, 2006.

Gregory Elisha Snow, Carol Ann Kowall, Pittsburgh, for Schenley Farms Civic Association, et al.

George R. Specter, Pittsburgh, for Zoning Bd. of Adjustment of City of Pittsburgh.

Edward C. Leckey, Pittsburgh, for The Twentieth Century Club.

Frank Kosir, Jr., Andrea Geraghty, Pittsburgh, for MedCano Corp.

BEFORE: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice SAYLOR.[1]

The issue in this land-use dispute is whether, and under what circumstances, an application for a special exception may

---

1. This case was reassigned to this author.

be granted conditioned upon the applicant's later compliance with the express requirements for the special exception under the zoning ordinance.

Appellee, the MedCano Corporation ("MedCano"), owns a two-story building that formerly housed the Historical Society of Western Pennsylvania (the "Society"). The building—which is bounded by properties owned by Appellants Elsie Broussard, M.D., the Twentieth Century Club, and residents of Schenley Farms (represented here by their Civic Association)—is located at 4338 Bigelow Boulevard, in the Oakland section of Pittsburgh. It is a two-story structure with a full basement, the entrance to which is at street level from Bigelow Boulevard. Each floor consists of a large, center open area with small reception areas in the front, and narrow passageways along the sides.

After offering the building for sale for approximately nine years, the Society ultimately arranged to sell it to MedCano and, in anticipation of the sale, submitted proposed changes to the property to the Oakland Planning Commission. This proposal, called an Interim Planning Overlay District ("IPOD") Plan, was required by the Pittsburgh Zoning Code (the "Zoning Code"),[2] and included: a small, on-site parking plaza consisting of three parking spaces; a pick-up and drop-off circular driveway; and a renovation to include meeting spaces on the first floor and medical offices on the remaining floors. The Historic Review Commission approved the plan, as did the Planning Commission. Thereafter, the property was sold to MedCano in July 1999.

In November 2000, MedCano filed an Application for Occupancy/Building Permit with Pittsburgh's zoning administrator, to utilize the property as a video conference center, a banquet hall for weddings, and rooms for the presentation of recitals

2. The relevant provision of the ordinance states:
   [E]very new or changed use of land, every building demolition, every new, enlarged or reconstructed advertising sign, every new or enlarged parking area, and every structure erected or enlarged [in the Oakland IPOD must] . . . be in accord with an IPOD Project Development Plan (PDP) . . . approved by the Planning Commission.
   Zoning Code, § 907.02.F.4.

and other musical productions. As there was insufficient on-site parking for these uses, MedCano sought a special exception pursuant to Section 914.07.G.2 of the Zoning Code, pertaining to off-site parking, *see infra.* The zoning administrator responded by scheduling a hearing on the matter before the Zoning Board of Adjustment of the City of Pittsburgh (the "Zoning Board").[3]

Before the Zoning Board, MedCano sought to avail itself of the special exception for off-site parking governed by Section 914.07.G.2 of the Zoning Code, which provides, in relevant part:

> The Zoning Board of Adjustment shall be authorized ... to consider and approve any alternative to providing off-street parking spaces on the site of the subject development if the applicant demonstrates to the satisfaction of the Zoning Board of Adjustment that the proposed plan will result in a better situation with respect to surrounding neighborhoods, citywide traffic circulation and urban design than would strict compliance with otherwise applicable off-street parking standards.
>
> (a) Off–Site Parking. The Zoning Board of Adjustment shall be authorized ... to permit all or a portion of the required off-street parking spaces to be located on a remote and separate lot from the lot on which the primary use is located, subject to the following standards.
>
> (1) Location. No off-site parking space shall be located more than 1,000 feet from the primary entrance of the use served, measured along the shortest legal, practical walking route. This distance limitation may be waived by the Zoning Board of Adjustment if adequate assurances are offered that van or shuttle services will be operated between the shared lot and the primary use.
>
> * * *

**3.** Because the property lacked sufficient on-site parking for the proposed use, the zoning administrator was required to schedule a hearing before the Zoning Board to consider the requested special exception, as only the Zoning Board was authorized to approve alternatives to on-site parking. *See* Zoning Code, §§ 914.07.G.2, 922.07.B.

(4) Off–Site Parking Agreement. In the event that an off-site parking area is not under the same ownership as the primary use served, a written agreement among the owners of record shall be required. An attested copy of the agreement between the owners of record shall be submitted to County Recorder's Office for recordation.... Proof of recordation of the agreement shall be presented to the Zoning Administrator prior to the issuance of a building permit....

Zoning Code, § 914.07.G.2.

At the hearings, MedCano presented the above-referenced IPOD Plan, as well as a Parking Demand Analysis Study, a Parking Management Plan, the testimony of a parking consultant, and a letter from Plaza Parking Services, Inc., the lessee-operator of the nearby Sterling Plaza Garage, confirming that it had sufficient parking spaces available during peak hours and that it would make those spaces available to MedCano patrons.[4] MedCano also offered evidence that it would provide valet or shuttle services to its patrons who decided to park at the Sterling Plaza Garage.

On October 5, 2001, the Zoning Board issued its decision in which it granted the special exception for off-site parking,

---

4. The letter was printed on Plaza Parking Services letterhead, was addressed to Elmer R. Cano, M.D., of MedCano, and stated as follows:

Re: Sterling Plaza Garage—Parking for 4338 Bigelow Boulevard
Dear Dr. Cano,
As I have explained, Plaza Parking Services is the lessee of garage facilities located at the corner of Craig and Bayard Streets in Oakland at the Sterling Plaza.
This letter is to confirm that the Sterling Plaza Garage has sufficient space available at all times, including during peak hours (Monday through Friday between 8 a.m. and 5 p.m.) to park an additional 60 vehicles, and will make this space available for patrons of the Historical Society Building located at 4338 Bigelow Boulevard.
Should you have any questions or wish to discuss this matter, please feel free to call. I look forward to working with you in connection with this matter.
Very truly yours,
/s/ Charles Cickavage
President, Plaza Parking Services
[P.S.] If needed Plaza Parking Services, Inc. can provide additional parking on weekends and during off peak hours.
RR. 145a.

conditioned upon MedCano's future compliance with certain conditions. The Zoning Board stated, in particular, that the

[s]pecial exception for off-site parking for the property at 4338 Bigelow Boulevard under Code § 914.07.G is GRANTED subject to the FOLLOWING CONDITIONS:

... The requested building/occupancy permit should not be issued unless and until:

(a) A written and legally binding van or shuttle service agreement with a third party is submitted to and approved by the Administrator or written evidence of the acquisition of a van by [MedCano] is so submitted and approved; and

(b) Section [914.07.G.2(a)(4)] is fully complied with.

Decision of Pittsburgh Zoning Board of Adjustment, Zone Case No. 165 of 2001, at 8.[5]

Dr. Broussard appealed the Zoning Board's decision to the Allegheny County Court of Common Pleas, and the remainder of the appellants intervened. The trial court decided the appeal without taking any additional evidence. The court issued an opinion stating that, although the off-site parking agreement introduced by MedCano "technically" failed to comply with Section 914.07.G.2(a)(4) of the Zoning Code, the Zoning Board had acted appropriately by conditioning the grant of the special exception upon MedCano's subsequent compliance with that section's mandates relative to off-site parking. Hence, by order dated May 23, 2002, the trial court affirmed the Zoning Board's decision and denied the appeals.

A divided, three-judge panel of the Commonwealth Court affirmed in a published opinion. *See Broussard v. Zoning Bd. of Adjustment of City of Pittsburgh*, 831 A.2d 764 (Pa.Cmwlth. 2003). The majority explained that the Zoning Code sets forth a two-step approval process for an off-site parking agreement: first, a written agreement among the owners of record must be obtained, and second, proof of the recordation

---

**5.** The text of the Zoning Board's decision references Section 914.07.-G.1, rather than Section 914.07.G.2, of the Zoning Code. This appears to have been an oversight, as only the latter provision is relevant to this matter. Accordingly, these sections numbers have been corrected in the above quotation.

of that agreement must be presented to the zoning administrator prior to the issuance of a building permit. The majority noted that the ordinance does not specify exactly when the written agreement is required in the special application process, and concluded, in this regard, that the Zoning Board had reasonably interpreted its own ordinance as not requiring the recordable form of the agreement to be included with the application for the special exception; rather, it may be submitted and filed at the building-permit stage of the project. In reaching this conclusion, the majority recognized that courts generally defer to a zoning board's interpretation of the ordinance it is charged to enforce. *See id.* at 770 (citing *In re Brickstone Realty Corp.*, 789 A.2d 333, 339 (Pa.Cmwlth.2001)). The court thus held that the absence of a recordable document at the hearing before the Zoning Board did not bar the grant of the special exception in light of the letter presented by MedCano from the operator of the Sterling Plaza Garage. *See id.*

Senior Judge Flaherty dissented, noting that Section 914.07.G.2(a)(4) of the Zoning Code authorizes a special exception for off-site parking only after the applicant produces a "written agreement among the owners of record." He observed that, under the language of the ordinance, an attested copy of the agreement must then be submitted to the County Recorder for recordation and, in turn, proof of recordation presented to the zoning administrator before issuance of a building permit. He opined that, because MedCano had no off-site parking agreement at the time of its application to the Zoning Board, the board should not have granted the special exception. In addition, he stated that such result was required under the reasoning of several earlier decisions of the Commonwealth Court. *See id.* at 773–75 (Flaherty, S.J., dissenting) (citing, *inter alia, Edgmont Township v. Springton Lake Montessori Sch.*, 154 Pa.Cmwlth. 76, 622 A.2d 418 (1993), *Appeal of Baird,* 113 Pa.Cmwlth. 637, 537 A.2d 976 (1988), and *Lafayette Coll. v. Zoning Hearing Bd. of City of Easton,* 138 Pa.Cmwlth. 579, 588 A.2d 1323 (1991)).

■ On April 6, 2004, this Court granted review, limited to the question of "whether the grant of a special exception under an applicable zoning code may be conditioned on the applicant's later compliance with the express requirements for the special exception." *Broussard v. Zoning Bd. of Adjustment of City of Pittsburgh,* 577 Pa. 668, 669, 848 A.2d 926, 926 (2004) *(per curiam).* Where, as here, the proceedings before the trial court were based entirely upon the record established before the Zoning Board, this Court's review is limited to whether the board clearly abused its discretion or committed an error of law. *See, e.g., Appeal of Facciolo,* 440 Pa. 508, 511, 269 A.2d 699, 701 (1970).[6]

■ Initially, we note that a special exception in a zoning ordinance is a use which is expressly permitted in a given zone so long as certain conditions detailed in the ordinance are found to exist. *See Appeal of Rieder,* 410 Pa. 420, 422, 188 A.2d 756, 757 (1963).[7]

**6.** Because this Court's leave to appeal was limited to the question of whether MedCano's future compliance with the Zoning Code could support the grant, there is no present issue concerning whether MedCano's alternative to on-site parking will "result in a better situation with respect to surrounding neighborhoods, citywide traffic circulation and urban design" for purposes of Section 914.07.G.2 of the Zoning Code.

**7.** Zoning authority for Pittsburgh is not governed by the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805 (as amended, 53 P.S. §§ 10101–11201), as that statute does not apply to second class cities. *See* 53 P.S. §§ 10103, 10107; *City of Pittsburgh v. Zoning Bd. of Adjustment of City of Pittsburgh,* 112 Pa.Cmwlth. 246, 535 A.2d 278, 280 (1987), *aff'd,* 522 Pa. 44, 559 A.2d 896 (1989). Rather, zoning by the City of Pittsburgh is governed by provisions of the second class city planning statute, Act of March 31, 1927, P.L. 98, §§ 1–8 (as amended, 53 P.S. 25052–25058), located at Article VI, Chapter 61 of the General Municipal Code, and by the home rule powers contained in the Pittsburgh Home Rule Charter, *see* 302 Pa.Code §§ 11.1–101–11.8–813. *See generally Klein v. Council of City of Pittsburgh,* 164 Pa.Cmwlth. 521, 643 A.2d 1107, 1109 (1994); *Pessolano v. Zoning Bd. of Adjustment of City of Pittsburgh,* 159 Pa.Cmwlth. 313, 632 A.2d 1090, 1093 n. 3 (1993); *Tuckfelt v. Zoning Bd. of Adjustment of City of Pittsburgh,* 80 Pa.Cmwlth. 496, 471 A.2d 1311, 1313 (1984); Pa. Jur. 2d Property § 24:3. The relevant provision of the second class city planning statute is broadly worded in that it permits the Zoning Board to approve special exceptions to the terms of the applicable ordinance "in harmony with its general purpose and intent and in accordance with general or specific rules contained therein." 53 P.S. § 25057. Nevertheless,

Thus, an exception has its origin in the zoning ordinance itself. It relates only to such situations as are expressly provided for and enunciated by the terms of the ordinance. The rules that determine the grant or refusal of the exception are enumerated in the ordinance itself.

*Kotzin v. Plymouth Township Zoning Bd. of Adjustment*, 395 Pa. 125, 127, 149 A.2d 116, 117–18 (1959). In this respect special exceptions differ from variances, which permit deviation from the strict terms of an ordinance where literal enforcement of the zoning provisions will result in an unnecessary hardship to the property owner, and allowing the proposed deviation will not harm the public interest. *See, e.g., Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 554 Pa. 249, 257, 721 A.2d 43, 47 (1998) (citing *Allegheny West Civic Council, Inc. v. Zoning Bd. of Adjustment of City of Pittsburgh*, 547 Pa. 163, 167, 689 A.2d 225, 227 (1997)).

■ When a landowner applies to municipal authorities for a special exception, the zoning board's function "is to determine that such specific facts, circumstances and conditions exist which comply with the standards of the ordinance and merit the granting of the exception." *Kotzin*, 395 Pa. at 127–28, 149 A.2d at 118. In light of the limited grant of allocatur in this matter as set forth above, the issue for resolution distills to whether the Zoning Board erred in finding that the Zoning Code's standards were satisfied by MedCano's submissions—including its Parking Management Plan, the written approval of same by the Pittsburgh City Planning Department, and the letter from Plaza Parking Services—which did not include an actual parking contract in recordable form, but which plainly reflected that Plaza and MedCano intended to enter into a parking agreement once the special exception was approved. The reason we understand this to be the central question involved, is that the specific wording of the limited grant concerned the more general issue of whether a munici-

general, judicially-established principles and/or restrictions relating to special exceptions apply here so long as they are consistent with the governing statutory framework. *See generally Pessolano*, 632 A.2d at 1093 n. 3.

pal zoning authority is permitted to approve a special exception conditioned upon the applicant's later compliance with the special exception's express requirements as set forth in the zoning code. Clearly the answer to that question as a general proposition is yes, as the prerequisites to a special exception may, in some instances, pertain to the physical characteristics of the subject property, and it would make little sense to force a property owner to undertake expensive alterations if the special exception may not be granted in the end. Thus, in the context of the present case, the more relevant and sharply focused issue is, as stated, whether the Zoning Board was permitted, under the circumstances, to grant the special exception conditioned upon MedCano's subsequent fulfillment of the stipulations contained in the grant.

■■ The answer depends, in the first instance, on whether the Zoning Board correctly interpreted the Zoning Code, which constitutes the primary controlling legal authority. In deciding that subsidiary question, we bear in mind that zoning ordinances should receive a reasonable and fair construction in light of the subject matter dealt with and the manifest intention of the local legislative body, see *Appeal of Perrin*, 305 Pa. 42, 55, 156 A. 305, 308–09 (1931); moreover, courts ordinarily grant deference to the zoning board's understanding of its own ordinance because, as a general matter, governmental agencies are entitled "great weight" in their interpretation of legislation they are charged to enforce. *Federal Deposit Ins. Corp. v. Board of Finance and Revenue*, 368 Pa. 463, 471, 84 A.2d 495, 499 (1951) (citing, *inter alia, Logan v. Davis*, 233 U.S. 613, 627, 34 S.Ct. 685, 690, 58 L.Ed. 1121 (1914)); *see Willits Woods Assocs. v. Zoning Bd. of Adjustment of City of Phila.*, 138 Pa.Cmwlth. 62, 67, 587 A.2d 827, 829 (1991); *Appeal of Longo*, 183 Pa.Super. 504, 508, 132 A.2d 899, 901 (1957); *cf.* 1 Pa.C.S. § 1921(c)(8). Notably, this principle applies where the precise meaning of the contested provisions is uncertain, and not where they are clear and explicit in their language. *See Federal Deposit Ins. Corp.*, 368 Pa. at 472, 84 A.2d at 499; 1 Pa.C.S. § 1921(c).

We agree with the Commonwealth Court majority that the Zoning Code is not explicit as to when the off-site parking agreement in recordable form must exist and be recorded. In particular, Section 914.07.G.2(a)(4) indicates that an off-site parking agreement between the owners of record is "required," but it does not say when. It also states that an attested copy of that agreement must be "submitted" for recordation at the County Recorder's office, but again it does not say when this must occur. In contrast, this provision does specify that "[p]roof of recordation of the [off-site parking] agreement shall be presented to the Zoning Administrator prior to issuance of a building permit." This is the only aspect of Section 914.07.G.2(a)(4) that gives an explicit sequence of events. Thus, the use of the term "prior to the issuance of a building permit," as opposed to "prior to the issuance of a special exception," could reasonably be viewed by the Zoning Board as permitting the conditional grant of a special exception to precede the existence of the agreement in recordable form, so long as the plan as submitted fairly indicates an intention to enter into such a contract. Given this uncertainty in the code's text, we find it appropriate to defer to the board's evident understanding that the ordinance did not prohibit its actions in this matter.[8]

Appellants, however, echo the reasoning of Senior Judge Flaherty's dissenting opinion and argue that the board's actions were inconsistent with legal precepts set forth by the Commonwealth Court in a line of cases dealing with after-the-fact fulfillment of conditions associated with special exceptions. Specifically, Appellants point to *Edgmont Township v. Springton Lake Montessori Sch.*, 154 Pa.Cmwlth. 76, 622 A.2d 418 (.1993), where the Commonwealth Court reversed the grant of a special exception because the plan submitted by the property owner did not contemplate satisfaction of several necessary conditions associated with the proposed use (a preschool facili-

---

**8.** We also defer to the Zoning Board's apparent understanding that the term "owner," as used in Section 914.07.G.2(a)(4), may include an entity that owns a leasehold interest giving it control over the required number of parking spaces. This makes practical sense given the Zoning Code's concern that adequate parking be guaranteed.

ty), including: an increase in septic capacity; the presence of screening and landscaping as a visual buffer; off-street parking and loading; and storm water management. *See id.* at 419. Appellants also cite to *Lafayette College v. Zoning Hearing Bd. of City of Easton,* 138 Pa.Cmwlth. 579, 588 A.2d 1323 (1991), and *Appeal of Baird,* 113 Pa.Cmwlth. 637, 537 A.2d 976 (1988), where the Commonwealth Court denied special exceptions for similar reasons. In *Baird,* the landowner wished to convert his property for use as a commercial dog kennel, but offered no plans, specifications, or testimony tending to show that he would meet the criteria set forth in the relevant zoning ordinance; instead, he merely testified before the board, in a generalized fashion, that he intended to come into full compliance with state and local regulations pertaining to dog kennels. The court found this to be an insufficient basis for the conditional grant and affirmed the board's decision to deny approval. *See id.* at 877–78, 537 A.2d 976. And in *Lafayette College,* the court affirmed the zoning board's denial of a special exception to facilitate the use of a single-family dwelling as student housing, where the college's plan did not comport with parking and set-back requirements contained in the zoning ordinance. The trial court had reversed the denial premised upon its own mandate that the college revise the location of the parking spaces to come into compliance. The Commonwealth Court reversed and reinstated the board's denial, finding that the board had acted within its powers in denying the exception based upon the submitted plan's lack of compliance with the zoning ordinance at the time it was submitted. *See Lafayette Coll.,* 588 A.2d at 1327.

Although this Court has never addressed the specific issue discussed in the *Edgmont/Lafayette College/Baird* line of cases, we do find those decisions instructive in that their distinctive feature is that the property owner had failed to include in its submissions before the zoning board any indication of an intention to fulfill the conditions associated with the special exception at issue. It was on this basis that the Commonwealth Court deemed the property owner's submissions insufficient, and not upon the lack of literal completion of

all conditions reflected in the plan itself. The *Edgmont* court, for example, did not suggest that the proposed land and building alterations had to be performed before a special exception could issue; rather, so long as the plan included these provisions in a satisfactory manner, approval could be given conditioned upon full compliance with the plan at a later date. Because, however, the zoning board had approved the special exception solely upon the landowner's promise to *revise the plan* to come into compliance with the zoning code, the court reversed. *See id.* at 420. Likewise, the applicant in *Baird* simply expressed his general purpose to comply with applicable regulations, but there was nothing in the proposal as submitted to the board that reflected any intent to do so; and in *Lafayette College,* the school's plan simply did not satisfy the zoning code's parking requirements.

In light of these precepts, we conclude that, where the plan, as submitted, addresses all of the ordinance's prerequisites for the special exception sought, and reasonably shows that the property owner is able to fulfill them in accordance with the procedures set forth by the zoning code (as reasonably interpreted by the board), a reviewing court should not reverse the grant of such an exception on the sole basis that some of the items described in the plan may be completed at a later date. *Cf. Lower Merion Township v. Enokay, Inc.,* 427 Pa. 128, 133–34, 233 A.2d 883, 886 (1967) (approving a special exception where the property owner submitted a plan whereby a sufficient number of parking spaces would be provided after the proposed building was erected). Here, as noted, the Zoning Board interpreted the relevant provisions of the ordinance to permit granting a special exception where MedCano's submissions contained adequate assurances that the off-site parking needs associated with the proposed use would be met in accordance with the requirements of the ordinance, even though no legally-binding contract existed at the time of the hearings. The board determined further that proof of such an agreement would have to be presented to the zoning administrator before a building permit could issue. This, in our view, not only represented a reasonable interpretation of the zoning

code's actual text, but also comported with the realities of the business setting in which the underlying negotiations took place.[9] Therefore, we see no basis in the Zoning Code or in any other legal doctrine to conclude that the Zoning Board was required to insist upon the presence of an actual, recordable contract at the plan-submission stage, particularly as substantial proof that MedCano could provide the requisite number of off-site parking spaces was reflected in the parking management plan, *see* RR. 142a, the city transportation planner's approval of the plan, *see* RR. 144a, and the letter issued by Plaza Parking Services, Inc., *see supra* note 4.

As a final matter, Appellants argue that MedCano's plan did not adequately address the need to provide van or shuttle service between the subject property and the off-site parking facility as required by the zoning code. *See* Section 914.07.-G.2(a)(1) (pertaining to waiver of the 1000–foot minimum distance between the property and the off-site parking facility conditioned upon adequate assurances that van or shuttle service will be operated). We do not agree with this assertion, as the plan reflected an intention to utilize "valet or shuttle van service transporting patrons to/from" the off-site parking facility. RR. 142a. Although the zoning ordinance states that waiver of the 1,000–foot maximum is contingent upon the presence of van or shuttle service rather than valet service, we

9. MedCano argues, persuasively in our view, as follows:

> The Appellants would have the recorded agreement presented to the Zoning Board of Adjustment before the alternative parking plan is approved. . . . If in fact the alternative parking plan is not approved . . . , both the applicant and the party with whom the applicant contracts for parking will be parties to a binding contract for which no purpose exists. . . .
>
> Nor does this theory comport with normal development practices. In the regular course of business of any development of a property, a development plan is prepared and submitted to the appropriate municipal governing bodies, for approval. Once the plan is approved, it is recorded and development begins. Here, the Parking Management Plan is the counterpart of the development plan, and once it is approved by the Zoning Board of Adjustment, it will be recorded, as will the binding agreement with the property owner of the off-site parking facility, and development will commence. And the plain language of the Zoning Code reflects this "regular course of business" approach.

Brief for Appellee at 13–14.

do not view the mere suggestion of an alternative offering of valet service as a fatal defect in the plan, particularly as the Zoning Board clarified that the van or shuttle alternative would have to be utilized. *See* Decision of City of Pittsburgh Zoning Board of Adjustment, Zone Case No. 165 of 2001, at 8.

In summary, we conclude that the Zoning Board's actions in this case were consistent with the Zoning Code as well as pertinent legal precepts; moreover, the public interest in controlled and orderly development is protected because the landowner cannot proceed to enjoy the special exception without fully complying with the ordinance.

Accordingly, the judgment of the Commonwealth Court is affirmed.

Chief Justice CAPPY, Justices CASTILLE, NEWMAN, EAKIN and BAER join the opinion.

Former Justice NIGRO did not participate in the decision of this case.