**In re Appeal of SW Land Associates, LLC**

142

C.P. of Montgomery County, no. 1461 CD 2010.

*Marc B. Kaplan*, for appellant.
*Gilbert P. High Jr.*, for Lower Merion Township.
*Sean P. Flynn*, for Lower Merion Township Zoning Hearing Board.
*Loren D. Szczesny*, for intervenor.

## OPINION

## I. INTRODUCTION

ROGERS, *J.*, October 21, 2010—Appellant, SW Land Associates, LLC ("appellant" or "SW Land") appeals to the Commonwealth Court of Pennsylvania ("Commonwealth Court") from the June 16, 2010 order of the undersigned, which denied its land use appeal and affirmed the November 15, 2007 decision of the Lower Merion Township Zoning Hearing Board ("ZHB"). For the following reasons we believe our order was proper and should be affirmed.

## II. FACTUAL and PROCEDURAL HISTORY

Appellant is the equitable owner of two properties known as130 Cricket Avenue and 24 1/2 School Lane, Ardmore, Lower Merion Township, Montgomery County, Pennsylvania. These parcels are adjoining and both are zoned R 6A Residence. Appellant proposed to subdivide a 5,000 square-foot portion of the school lane lot, consolidate that with the Cricket Avenue lot, and then build a "subsidized apartment house "on the combined site." The Lower Merion Township zoning ordinance

permits that use in the R 6A district by special exception. Code §155-50.2. Appellant submitted an application for a special exception and for variances from a number of requirements.

Hearings on appellant's application were held on June 28, 2007, August 8, 2007, August 30, 2007, and September 6, 2007. Appellant made several amendments to the application during the course of the hearings and ultimately withdrew all variance requests. Appellant requested the ZHB to grant two special exceptions: (1) to allow the subsidized apartment house under the provisions of section 50.2 of the zoning ordinance, and (2) to allow a portion of the planned parking garage to be located under the required side yard under section 94 B of the zoning ordinance. (N.T. 8/30/2007, pp. 7-13). A number of neighbors (the "objectors") testified in opposition to appellant's proposed use.

At the time of appellant's submission[1], section 50.2 of the zoning ordinance contained a number of specific criteria, which appellant had to satisfy in order to be entitled to develop the property with subsidized apartment housing:

§ 155-50.2 Subsidized apartment housing.

Subsidized apartment housing may be authorized as a special exception in this district and any district in which a use permitted in R 6A Residence Districts is allowed, in which case the following regulations shall apply:

---

1. The Township Board of Commissioners amended section 50.2 of the zoning ordinance on June 13, 2007. The zoning board judged the application by the terms of the zoning ordinance, as it existed when the application was filed. See 53 P.S. § 10917.

A. Definitions. As used in this section, the following terms shall have the meanings indicated:

FACILITY - Subsidized apartment housing units completed pursuant to a single land development application.

SUBSIDIZED APARTMENT HOUSING - - A building or complex of buildings which:

(1) Contains two or more single-family residential units, provided at least 50% of the dwelling units on a single tract are subsidized apartment units as defined herein, and all of such dwelling units comply with the requirements of this section.

(2) Is subsidized by grants of Community Development Block Grant funds authorized under Title I of the Housing and Community Development Act of 1974, as amended, administered by the United States Department of Housing and Urban Development and/or grants or credit programs administered by the Commonwealth of Pennsylvania, for very-low, low and moderate-income families, including elderly and handicapped persons; and

(3) (Reserved)

(4) Complies with federal and state fair housing laws.

B. Area and width regulations.

(1) Lot area and width. [...]

(2) Building area. No more than 60 percent of the area of each lot may be occupied by buildings.

(3) Impervious surface. Not more than 60 percent of the area of each lot may be covered with impervious surfaces.

(4) Front yard. There shall be a front yard on each street on which the lot abuts, the depth of which shall be at least 10 feet. Open porches may project up to five feet into the front yard.

(5) Side yards. There shall be two side yards, one on each side of the principal building, neither of which shall be less than eight feet.

(6) Rear yard. There shall be a rear yard, the depth of which shall be at least 16 feet.

(7) Buffer area. Along the full length of each side and rear lot line, a buffer area of not less than eight feet in width, as defined by §155-4B, shall be provided.

(8) Separation requirements. The distance between two or more apartment buildings on the same lot shall be a minimum of 10 feet.

C. Height regulations. The height of a subsidized apartment house shall not exceed 35 feet.

D. Parking requirements. There shall be not less than one parking space for each new dwelling unit newly constructed on the lot in excess of the dwelling units existing on the lot at the time of granting the special exception, plus that number of parking spaces existing on the lot at the time of granting the special exception.

E. No subsidized apartment housing facility shall be located closer to another such facility than a distance determined by multiplying times 20 the required street frontage for a single family detached dwelling in the district in which the facility is located.

Code §155-50.2

The ZHB issued its decision on November 15, 2007,

finding that appellant failed to sustain its burden of proving that the proposed subsidized apartment house complied with all the objective criteria in the zoning ordinance. The ZHB deemed appellant's request for a special exception for the parking garage moot (since no portion of the garage would be located in a yard area). The ZHB did not rule on the objector's claim that the grant of the requested relief would cause substantial adverse effects on the public health, safety and welfare.

On December 17, 2007, appellant filed an appeal from the ZHB's decision with the Montgomery County Court of common pleas. On December 18, 2007, Lower Merion Township filed a notice of intervention. On January 11, 2008, a motion to intervene was filed by a neighbor, Patricia Sandiford. This motion was granted by stipulated order of May 15, 2008. A number of objections were raised by other neighbors.

Argument was heard before the undersigned on January 7, 2009. No additional evidence was received. By order docketed June 17, 2010, the decision of the ZHB was affirmed.

Appellant filed a notice of appeal with the commonwealth court on July 15, 2010. By order docketed July 23, 2010, the undersigned directed appellant to file a concise statement of the errors complained of on appeal ("concise statement") with the court pursuant to Pa. R.A.P. 1925(b). Appellant's concise statement was timely filed on August 13, 2010.

### III. ISSUES

Appellant presented the following issues in its concise

statement:

*Federal and State Fair Housing Laws*

1. The court committed an error of law and/or abused its discretion in affirming the ZHB's requirement that SW Land prove compliance with fair housing laws during the special exception phase of the land development process.

2. The court committed an error of law and/or abused its discretion in affirming the ZHB's determination that SW Land failed to prove compliance with federal and state fair housing laws.

3. The court committed an error of law and/or abused its discretion in affirming the ZHB's requirement that SW Land prove compliance with accessibility requirements during the special exception phase of the land development process.

4. The court committed an error of law and/or abused its discretion in affirming the ZHB's determination that SW Land failed to prove compliance with accessibility requirements.

5. The court committed an error of law and/or abused its discretion in affirming the ZHB's determination without regard to the fact that the determination as to compliance with accessibility requirements are not within the purview of the ZHB, but instead are, under applicable law, within the purview of the building code official.

*Impervious Coverage*

6. The court committed an error of law and/or abused its discretion in affirming the ZHB's determination that SW Land failed to prove compliance with impervious surface limits of the zoning code.

7. Without limiting the general claims described above, the court committed an error of law and/or abused its discretion in affirming the ZHB's decision, which in part relied upon speculation that sidewalks and building overhangs if added to the plan in the future would constitute an impervious surface and would violate the zoning code's impervious coverage limits.

*Parking*

8. The court committed an error of law and/or abused its discretion in affirming the ZHB's determination that SW Land failed to prove compliance with the parking requirements of the zoning code.

9. Without limiting the general claims described above, the court committed an error of law and/or abused its discretion in affirming the ZHB's decision, which relied in part on an erroneous conclusion that existing residential units are to be maintained, when in fact, they are to be demolished.

*Buffer*

10. The court committed an error of law and/or abused its discretion in affirming the ZHB's determination that SW Land failed to prove compliance with the buffer requirements of the zoning code.

11. Without limiting the general claims described above, the court committed an error (sic) law and/or abused its discretion in affirming the ZHB's conclusion that a retaining wall was located in a required buffer yard and if that retaining wall was within a required buffer yard that the retaining wall was not permitted in the required buffer yard.

12. Without limiting the general claims described above, the court committed an error (sic) law and/or abused its discretion in affirming the ZHB's conclusion that an at-grade grate was located in the buffer yard and that if such grate was within the buffer yard, that the grate violated the buffer yard requirements.

*Separation*

13. The court committed an error of law and/or abused its discretion in affirming the ZHB's determination that SW Land failed to prove compliance with the separation requirements of the zoning code.

14. Without limiting the general claims described above, the court committed an error (sic) law and/or abused its discretion in affirming the ZHB's conclusion that the separation requirements are measured other than from building to building.

*Miscellaneous*

15. The court committed an error of law and/or abused its discretion in determining that the ZHB was not required to interpret vague and ambiguous requirements of the zoning code in favor of SW Land.

16. The court committed an error of law and/or abused its discretion by affirming the ZHB's decision, where the ZHB should have employed conditions of approval to address the claimed deficiencies rather than deny SW Land's application.

17. The court committed an error of law and/or abused its discretion by applying an improper standard of review to the issues. The court should have employed a plenary standard of review as all of the issues involved questions

of law.

18. Appellant SW Land respectfully reserves the right to amend the foregoing upon receipt of an opinion from the court which includes the court's rationale for affirming the ZHB's decision.

## IV. DISCUSSION

The standard of review where the court of common pleas has taken no additional evidence is limited to a determination of whether the board committed a manifest abuse of discretion or an error of law. *In re Appeal of deBotton*, 81 Pa.Cmwlth. 513, 516, 474 A.2d 706, 707 (1984). Where the board's findings of fact are unsupported by substantial evidence, the trial court has committed a manifest abuse of discretion. *Id.* at 516, 474 A.2d at 708. Substantial evidence has been defined by our supreme court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 555, 462 A.2d 637, 640 (1983).

In weighing evidence heard by a zoning hearing board, the trial court may not substitute its interpretation of the evidence for that of the board because determinations about the credibility of witnesses and the weight to be given to the evidence are to be made by the board. *Vanguard Cellular System, Inc. v. Zoning Hearing Board of Smithfield Township*, 130 Pa.Cmwlth. 371, 568 A.2d 703 (1989); *In re: Appeal of the Cutler Group, Inc.*, 880 A.2d 39 (Pa.Cmwlth. Ct. 2005), appeal denied, 587 Pa. 701, 897 A.2d 461 (2006). Assuming that the record demonstrates the existence of substantial evidence, the court is bound by the board's findings that result from the resolutions of credibility and conflicting testimony rather

than a capricious disregard of the evidence. *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807, 811 (Pa.Cmwlth. 2005), appeal denied, 585 Pa. 692, 887 A.2d 1243 (2005).

A zoning hearing board's interpretation of a zoning ordinance is entitled to great weight, and it is the practice of the commonwealth court "to defer to a zoning board's interpretation of the zoning ordinance it is charged to enforce." *Broussard v. Zoning Board of Adjustment of the City of Pittsburgh*, 831 A.2d 764, 770 (Pa.Cmwlth. 2003).

Finally, the commonwealth court has stated that questions of witness credibility are "solely within the province of the ZHB and the ZHB is free to accept or reject the testimony of any witnesses, in whole or in part." *Southeastern Chester County Refuse Authority v. Zoning Hearing Board of London Grove Township*, 898 A.2d 680 (Pa.Cmwlth. 2006) (zoning board's acceptance of an expert witness's testimony was substantial evidence enough to support the board's decision).

*Special Exception Standard*

Pennsylvania law provides that a special exception is a use to which an applicant is entitled as a matter of right unless the zoning board determines that the use would adversely affect the community. *East Manchester Zoning Hearing Board v. Dallmeyer*, 609 A.2d 604, 606 (Pa. Cmwlth. 1992). However, the applicant must first prove not only that the proposed use is of the type permitted by special exception but also that the use complies with all the other criteria in the ordinance that expressly govern such a grant. *Broussard v. Zoning Board of Adjustment of the City of Pittsburgh*, 589 Pa. 71, 79, 907 A.2d 494,

499 (2006); *Baird v. New Britain Township*, 537 A.2d 976 (1988) (conditions for special exception detailed in the ordinance must be found to exist). It is the burden of the applicant to demonstrate full compliance with all the standards and criteria in the ordinance. *Elizabethtown/Mt. Joy Associates, L.P. v. Mount Joy Township Zoning Hearing Board*, 934 A.2d 759, 764 (Pa.Cmwlth. 2007). Only after the applicant proves compliance does the burden shift to the objectors to present evidence that the proposed use will have a detrimental effect on the public health, safety and welfare of the community. *Hoppe v. Zoning Hearing Board of Portland*, 910 A.2d 756, 758 (Pa.Cmwlth. 2006); *Baird v. New Britain Township*, 537 A.2d 976 (Pa.Cmwlth. 1988); *Bray v. Zoning Board of Adjustment*, 410 A.2d 909 (Pa.Cmwlth. 1980).

In this matter, appellant failed to prove compliance with a number of standards and criteria in the ordinance.

*Federal and State Fair Housing Laws*

Appellant has grouped the matters complained of in several distinct categories, the contentions of error and/or abuse of discretion relative to federal and state fair housing laws are as follows: The court committed an error of law and/or abused its discretion in affirming the ZHB's requirement that SW Land prove compliance with fair housing laws during the special exception phase of the land development process; in affirming the ZHB's determination that SW Land failed to prove compliance with federal and state fair housing laws; in affirming the ZHB's requirement that SW Land prove compliance with accessibility requirements during the special exception phase of the land development process; in affirming the ZHB's determination that SW Land failed to prove

compliance with accessibility requirements; and in affirming the ZHB's determination without regard to the fact that the determination as to compliance with accessibility requirements are not within the purview of the ZHB, but instead are, under applicable law, within the purview of the building code official. For the following reasons we disagree with appellant's contentions.

The Pennsylvania Supreme Court has directly addressed the issue holding that an applicant for a special exception can obtain approval conditioned on future compliance with zoning requirements, but only when detailed plans are submitted on which a zoning hearing board can base its approval. *Broussard v. Zoning Board of Adjustment of the City of Pittsburgh*, 589 Pa. 71, 84, 907 A.2d 494, 501-502 (2006); see also, *Edgmont Township v. Springton Lake Montessori School*, 622 A.2d 418 (Pa. Cmwlth. 1993).

Instantly, appellant's proposed project met the definition of "subsidized apartment housing" in section 50.2 A of the zoning ordinance. The evidence supported a finding that at least 50% of the units would be subsidized by a credit program meeting the requirements of A(1) and A(2), but appellant failed to prove compliance with subsection A(4) that the project would comply with federal and state fair housing laws. Code §155-50.2 A(4).

Appellant presented expert witness Dennis Culhane, Professor of Social Policy at the University of Pennsylvania. He testified that his primary area of research is "housing policy", which relates to state and federal laws including accessibility standards. (N.T. 8/30/07, pp. 22-24). Professor Culhane testified that he was somewhat familiar with Pennsylvania fair housing laws, but he did not "know the specific details" and was "not specifically familiar"

with Pennsylvania requirements for non-discrimination in the sale and leasing of housing. (N.T. 8/30/07, pp. 24-26). Moreover, he testified that he had never done a study of Pennsylvania regulations of fair housing. (N.T. 8/30/07, pp. 28-29.) He further stated that he had, on other matters, reviewed architectural plans in order to be able to render an opinion on compliance with fair housing laws, but that appellant had not provided him with any such plans. (N.T. 8/30/07, pp. 41-44).

Q. [Board Chairman Aaron]: So it is possible for somebody to prepare a plan for you to have reviewed that would enable you to make a determination as to whether – give an opinion as to whether it complied; is that right?

A. [Mr. Culhane]: Yes.

Q. And this [appellant's] plan doesn't adequately provide you with that information?

A. This plan is not developed to the level of detail where one could make that assessment. One has to - -

Q. But one could develop a plan to that - -

A. Absolutely. Yes. But at this point what you can say is that the plan as represented would be sufficient at this stage to be able to say that it could meet accessibility requirements, but I really -- its -- it's really the qualifications of the architect and the experience of the architect with regard to being able to fulfill what's required under the law that is the representation that is relevant at this point in the development of the plans.

(N.T. 8/30/07, pp. 43-44) (emphasis added).

Appellant then called its architect, Jeremy Greene, who

failed to render an opinion as to whether the proposed project complies with the fair housing laws and couldn't state that his design would "fulfill what's required under the law." (N.T. 8/30/07, pp. 87-100) Mr. Greene was asked by the board whether he could produce the type of architectural plans that Professor Culhane had described so that Professor Culhane could render an opinion on compliance with the fair housing laws. Mr. Greene said that he could do that within two days. (N.T. 8/30/07, pp. 141-142)

Mr. Greene reappeared to testify on September 6, 2007 at the final hearing on this matter, but failed to produce the architectural plans that Professor Culhane needed for his opinion. Moreover, Mr. Greene was never directed by appellant to produce the plans despite the ZHB's questioning as to how quickly the plans could be produced. (N.T. 9/06/07, pp. 178-180).

Appellant's representative, Craig Snyder, testified that he was familiar with non-discrimination laws and that the project would be appropriately posted to create a climate of compliance with that aspect of the law, with specific regard to the accessibility component of fair housing but he did not produce the plans the expert testified was necessary to render an opinion on whether the apartment housing complied with the applicable laws. Without this information, the ZHB was well within its discretion to give no weight to Professor Culhane's opinion that the project "could" comply with the accessibility provisions of the fair housing laws. The zoning ordinance requires that appellant prove that that project "complies". Code §155-50.2 A(4).

Moreover, Craig Snyder's statement that "appellant intends to comply with federal and state fair housing laws" does not carry appellant's burden. (N.T. 9/06/07, pp. 177-178)

In the matter of *Elizabethtown/Mt. Joy Associates, L.P. v. Mount Joy Township Zoning Hearing Board*, 934 A.2d 759 (Pa.Cmwlth. 2007), a developer submitted an application for a special exception to construct a shopping center on a 22 acre property. The plans for the shopping center were amended during the application process to address certain deficiencies, but after eight hearings, the zoning board denied relief, finding that the developer's plans were not detailed enough to prove that the shopping center would comply with the ordinance requirements for architectural style, signage, traffic and road improvements and lighting. The trial court affirmed the zoning board and the commonwealth court, upon further review, also affirmed.

The commonwealth court's discussion of the need for special exception applicants to provide a zoning hearing board with sufficiently detailed plans applies as well to the case, subjudice. The developer and its witnesses in *Mount Joy* claimed, as does appellant instantly, that details regarding the shopping center's architectural style and lighting would be finalized during the land development process and that is was not the function of the zoning board to evaluate the minutiae of that process. In *Mount Joy*, the suggestion was that appellant's commitment to adhere to the ordinance, along with their conceptual plans, ought to be sufficient to grant a special exception.

Here, appellant suggests that its tentative sketch plans and it promise to adhere to fair housing laws were sufficient

to prove compliance and that the ZHB should simply have conditioned approval on the township's building code official's determination of the project's compliance with state and federal fair housing laws. (appellant's memorandum in support of land use appeal, 9/17/2008, p. 17).

This approach would suggest that the ZHB cede to Township Administration the ZHB's exclusive jurisdiction under the Municipalities Planning Code to grant special exceptions. 53 P.S. §10912.1. The zoning ordinance requires that the ZHB, not the building code officer determine whether a proposed subsidized housing apartment complies with the state and federal fair housing laws. Code §155-50.2 A(4).

The commonwealth court expressly supported a zoning board's denial of a special exception where plans detailing compliance are not provided:

> Even if an applicant demonstrates that it can comply with the ordinance requirements and promises to do so, the ZHB does not err in denying the application. Simply put, a concept plan is insufficient to warrant the granting of a special exception; rather, to be entitled to receive a special exception, the applicant must come forward with evidence detailing its compliance with the necessary requirements.

*Elizabethtown/Mt. Joy Associates, L.P. v. Mount Joy Township Zoning Hearing Board*, 934 A.2d at 768.

Hence, the testimony that the project "could comply" or "will comply" with fair housing laws was not sufficient proof that the project complies, as specifically required by the zoning ordinance. The ZHB did not commit an error of

law or manifest abuse of discretion in so holding.

*Impervious Coverage*

Appellant's next grouping deals with impervious coverage and contends that the court committed an error of law and/or abused its discretion in affirming the ZHB's determination that SW Land failed to prove compliance with impervious surface limits of the zoning code; and in affirming the ZHB's decision, which in part relied upon speculation that sidewalks and building overhangs if added to the plan in the future would constitute an impervious surface and would violate the zoning code's impervious coverage limits. For the following reasons, we disagree.

Section 50.2.B.(3) of the zoning ordinance limits the impervious surface for subsidized apartment housing to 60% of the area of each lot. Code §155-50.2.B.(3). Appellant's engineer, Kevin Momenee testified on direct that the post-development impervious surface would be 23,099 square feet - 59.1% of the lot area. (N.T. 8/30/07, p. 51); see, appellant's Exhibit V. However, on cross-examination, Mr. Momenee admitted that he did not count roof overhangs, porch areas, and certain sidewalks in his calculations, despite the zoning ordinance's specific inclusion of those elements in the definition of impervious surface. (N.T. 9/06/07, pp. 15-16) Mr. Momenee suggested that certain changes could be made to the plans (eliminating patios, e.g.) to ensure that the final development would comply with the 60% limitation. Mr. Momenee agreed that a more detailed site plan could have been provided to the ZHB to prove whether the proposal presently complies with the impervious surface requirement for a special exception. The following exchange took place on Mr. Momenee's cross-examination:

Q. [Board Member Fox]. So if you proceeded concurrently [with land development and zoning] and you got tentative sketch approval while you were proceeding with your zoning approval, you would submit a preliminary plan which would have all those engineering documentation [sic] on it and all the impervious surface calculations at the same time you were proceeding with zoning; correct?

A. [Mr. Momenee]. That could be done, yes.

Q. And nothing is prohibiting that from being done here, because we don't even have something that would satisfy a tentative sketch drawing; is that correct?

A. No. That is pretty much the - - that is the tentative sketch.

Q. So this is the tentative sketch, but we don't have any of the engineering calculations to demonstrate the elements that we need for determining whether a special exception [sic]. Your testimony is merely that, tell me if I'm wrong, because I want to understand it, your testimony is merely that we can do it and we will do it, but you haven't shown that to me in the documents that you presented.

A. The plan shows the footprint of the building, which is the best information that is available right now on the footprint of the building. It shows the driveway going in, the walkways.

Q. I'm not trying to be tricky. I'm really trying to understand where we are. And I have a plan that is submitted as exhibit V which basically has a calculation of impervious surface and as a layperson, not an engineer, just by adding the overhang, unless you do something else on this property, you are over

the impervious surface; correct?

A. But there is also an item on there which is patios which is very flexible and could be eliminated totally and would --

Q. But that would require you to show us something different than what's on this tentative sketch that would get you under the impervious surface. We don't have that in front of us now; correct?

A. Correct.

(N.T. 9/06/07, pp. 165-167).

Appellant's architect, Mr. Greene, confirmed that if just the overhangs, which he included in his architectural plans, had been shown on the amended site plan and included in the impervious calculations by Mr. Momenee, the development would not comply with the impervious surface limitation for a subsidized apartment house. (N.T. 9/06/07, pp. 43-44; 53-54; 158-159) Thus, contrary to the statements in appellant's brief that the ZHB speculated about the overhangs and sidewalks (Appellant's Memorandum in Support of Land Use Appeal, 9/17/2008, p. 18), the architect's plans plainly depicted overhangs and sidewalks, and appellant's engineer failed to consider them in his calculation of impervious surface. Additionally, objector's expert engineer, Joseph Graci, testified that not only had appellant failed to include roof overhangs in its impervious calculations, it failed to include areas of soil impacted by storm water management facilities (with crushed stone, e.g.). Using the information from the architect's drawings, Mr. Graci estimated that the plans were significantly over the maximum impervious surface allowed. (N.T. 9/06/07, pp. 77-79) Consequently, not only did appellant fail to

sustain its burden of proving compliance with impervious surface limitations but the plans submitted showed that the project *exceeded* the impervious surface limits.

When a zoning ordinance contains specific requirements for a special exception, an applicant's plans must depict how the proposed development will comply with those requirements, even if compliance is to be accomplished in the future. Hence, in approving the Commonwealth Court's prior reasoning in the *Edgmont* decision, the Supreme Court in *Broussard* noted:

> The Edgmont court, for example, did not suggest that the proposed land and building alterations had to be performed before a special exception could issue; rather, so long as the plan included these provisions in a satisfactory manner, approval could be given conditioned upon full compliance with the plan at a later date. 907 A.2d at 501.

As noted in *Mount Joy*, the developer's preliminary plans and its descriptions of what "could" be done to meet the requirements of the zoning ordinance were insufficient substitutes for detailed plans that would allow the zoning board to determine for itself whether the plans complied. Clearly, appellant's own witnesses acknowledged that regardless of what "could" be done in the future to meet the impervious surface limitation, the plans submitted to the ZHB do not demonstrate compliance.

*Parking*

Appellant's next grouping deals with parking and contends that the court committed an error of law and/or abused its discretion in affirming the ZHB's determination that SW Land failed to prove compliance with the parking

requirement of the zoning code; and in affirming the ZHB's decision, which relied in part on an erroneous conclusion that existing residential units are to be maintained, when in fact, they are to be demolished. For the following reasons we believe appellant is mistaken.

Subsection D of the subsidized apartment housing regulations requires:

> Parking requirements. There shall be not less than one parking space for each new dwelling unit newly constructed on the lot in excess of the dwelling units existing on the lot at the time of granting the special exception, plus that number of parking spaces existing on the lot at the time of granting the special exception.

Code § 155-50.2.D.

The amended plans submitted at the August 30, 2007 hearing indicate a total of 41 parking spaces – 33 in an underground lot below the planned building and eight spaces in a small surface lot adjacent to Cricket Avenue. (appellant's Exhibits U and V). Appellant's engineer, Mr. Momenee, testified on August 8, 2007 that at least 55 spaces are required under the zoning ordinance. Mr. Momenee arrived at that figure by applying the special parking provisions in section 50.2 D for the subsidized units (one space for each of the 19 subsidized units) and then applied the standard apartment building parking requirements in section 95A for the nonsubsidized units (two spaces for each of the 18 nonsubsidized units). (N.T. 8/08/07, p. 133). Mr. Momenee did not, however, take into account any of the spaces that already exist on the property as required by section 50.2 D. That would add, according to Mr. Momenee's initial testimony on August

8, 2007, two more spaces for a total requirement of 57 parking spaces. (N.T. 8/08/07, pp. 133-138).

On redirect examination, Mr. Momenee rejected his earlier interpretation of the zoning ordinance and testified that section 50.2 D alone controls the required number of spaces and that only one space for each unit, subsidized or not, is required plus one space for each space that currently exists on the property. (N.T. 8/08/07, pp. 145-147).

On August 30, 2007, when Mr. Momenee returned to testify, he indicated that 41 spaces total were required for the project, 37 for each new unit, plus four additional for the spaces that currently exist on the property. (N.T. 8/30/07, pp. 53, 66). Mr. Momenee did not, however, count the spaces that currently exist on the property. He arrived at four by calculating the number of spaces that the zoning ordinance would require for the existing multi-family building on the Cricket Avenue lot.[2] He also did not take into account any of the other buildings on the property or any of the parking spaces that currently exist on the School Lane lot. (N.T. 8/30/07, pp. 78-81).

On September 6, 2007, appellant's architect, Mr. Greene testified that the number of existing spaces was "indeterminate" and that in arriving at the 41 spaces shown on the plans, appellant had not considered the additional dwelling units on the Cricket Avenue lot shown on the existing features plan. (N.T.9/06/07, pp. 157; 159; 161). In total, Mr. Greene believed that there are four dwelling units on the Cricket Avenue and School Lane lots, but he did not know how many spaces are actually located on those lots. (N.T. 9/06/07, pp. 160-161).

---

2. Section 95K requires two spaces per "family" in single-family and two-family dwellings. Code § 155-95 K.

Appellant's evidence thus failed to prove that the project provided the required number of parking spaces. The ZHB deemed accurate information on the parking spaces presently exist to be critical because the zoning ordinance allows a subsidized apartment house to have one-half of the number of parking spaces required for a standard apartment house with the same number of units. The preservation of existing spaces required by subsection D mitigates some of the adverse effects that are likely to be caused by a one-space-per-unit parking plan for a subsidized apartment house. Cf, Code §155-95 A. Moreover, appellant's present denial notwithstanding, its plan shows that appellant intends to keep some of the existing dwelling units on the property.

For these reasons, there was no definitive credible testimony regarding the issue of the number of spaces that currently exist on the property. With at least four dwelling units currently on the site, and with substantial gravel and impervious areas identified on the existing features plan, the ZHB did not abuse its discretion in rejecting appellant's testimony that just four additional spaces are sufficient to account for the existing parking.

*Buffer*

Appellant's next grouping deals with buffer and contends that the court committed an error of law and/or abused its discretion in affirming the ZHB's determination that SW Land failed to prove compliance with the buffer requirements of the zoning code; in affirming the ZHB's conclusion that a retaining wall was located in a required buffer yard and if that retaining wall was within a required buffer yard that the retaining wall was not permitted in the required buffer yard; and in affirming the ZHB's

conclusion that an at-grade grate was located in the buffer yard and if such grate was within the buffer yard, that the grate violated the buffer yard requirements. We disagree.

Section 50.2 B (7) of the zoning ordinance requires an 8-foot buffer for a subsidized apartment house. Code §155-50.2 B (7). A "buffer area" must be landscaped to the full width required. Code §155-4 B ("Buffer Area"). Appellant's plans indicate that an exhaust fan for the garage and retaining wall for the driveway will encroach into the required 8-foot buffer area. (N.T. 9/06/07, pp. 14-15,80).

Whether or not, as appellant claims, the intrusions into the buffer could be removed, the plans submitted to the ZHB showed items within the buffer. The *Broussard* decision, on which appellant relies, does not allow the ZHB to ignore a plan that shows noncompliance. Appellant now suggests that the ZHB's "hyper-technical" reading of the zoning ordinance was nothing more than a reading of the ordinance's plain language. The exhaust fan and retaining wall prevent compliance with the requirement that the buffer be landscaped for its full width. The ZHB did not err in making that determination.

*Separation*

Appellant's next grouping deals with separation and contends that the court committed an error of law and/or abused its discretion in affirming the ZHB's determination that SW Land failed to prove compliance with the separation requirements of the zoning code; and in affirming the ZHB's conclusion that the separation requirements are measured other than from building to building. We disagree.

The zoning ordinance requires that a proposed subsidized apartment maintain a certain distance (agreed to be 1,000 feet in this case) from other "such" facilities. Code §155-50.2.E. The ZHB had to determine whether appellant's proposed facility would be within 1,000 feet of two other projects: (1) the Ardmore House, a subsidized apartment house for the elderly developed under section 50.1 of the zoning ordinance, and (2) the Spring Avenue condominiums, a subsidized apartment house developed under Section 50.2. The ZHB concluded that appellant's facility would not violate the separation provision with regard to the Ardmore House, but concluded that the facility would violate the separation provision with regard to the Spring Avenue condominiums.

The provision at issue is Subsection E of the subsidized apartment house regulations and it provides:

No subsidized apartment housing facility shall be located closer to another such facility than a distance determined by multiplying times 20 the required street frontage for a single-family detached dwelling in the district in which the facility is located. Code §155-50.2.E

The ZHB found that, although appellant's project is admittedly within 1000 feet of the Ardmore House, the separation requirement of subsection E did not apply to that facility because it is a "subsidized apartment housing for the elderly", developed under section 50.1, not a "subsidized apartment housing facility" developed under section 50.2. The ZHB's interpretation of Subsection E, which also formed the basis of the findings with regard to the Spring Avenue condominiums, was based on the specific definitions provided in section 50.2. A.

The definition of "subsidized apartment housing" requires that it be subsidized by HUD Community Development Block Grant funds and/or grants or credit programs administered by Pennsylvania for very-low, low - and moderate-income families. Code § 155-50.2.A.(2). Section 50.2 concomitantly defines "facility" to be subsidized apartment housing units completed pursuant to a single land development plan. Code § 155-50.2. A.

The ZHB agreed with the argument appellant made at the hearings that because the zoning ordinance provides these specific definitions, the ZHB could not look to dictionaries, common usage, or other sources to determine the meaning of the terms used in the separation provision. *See, Diversified Health Associates, Inc. v. Zoning Hearing Board of Norristown*, 781 A.2d 244 (Pa.Cmwlth. 2001).

The Ardmore House, developed under Section 50.1, was subsidized under HUD's section 202 Direct Loan Program, an entirely distinct program and an entirely distinct use under a different section of the zoning ordinance than the sections that regulate appellant's proposed project. (N.T. 6/28/07, pp. 38-39).

The issue of proximity of appellant's development to the Spring Avenue condominiums, which were approved as a "subsidized apartment housing facility" under section 50.2, was raised by the township after the hearings had begun and after appellant had argued for a strict reading of the definitions section in 50.2 A. Faced mid-hearings with the fact that another section 50.2 project was indeed within 1000 feet of its planned development, appellant abandoned its precise reading of the separation provision and argued that the zoning ordinance is ambiguous and that the distance between the two facilities should be measured

from "building to building" rather than from "lot line to lot line" (or from other structures or elements on the properties). (N.T. 9/06/07, pp. 8-9). Using the building-to-building measurement, appellant produced amended plans that reconfigured the proposed building on the property to purportedly be exactly 1000 feet from the nearest living unit in the Spring Avenue condominiums.

The objectors argued that "facility" includes more than just the building, that it must include the parking, driveways, buffers, etc. that are required to be provided under section 50.2 of the ordinance for subsidized apartment housing units. The evidence showed that, measured from the parking areas and driveway in the southwest corner of the property, appellant's "facility" is less than 1000 feet from the Spring Avenue site by a measurement, in violation of Subsection E.

The ZHB held that the appropriate measuring distance is from the lot line to lot line. That determination was not an error of law or abuse of discretion.

Appellant relies on *Phillips v. Zoning Hearing Board of Montour Township*, 776 A.2d 341 (Pa.Cmwlth. 2001), for the proposition that separation distance must be measured from building to building. However, the court in *Philips* determined that building to building was an appropriate measure in the absence of restrictive language. In relying on *Phillips*, appellant ignores the restrictive language in the Lower Merion Township Zoning Ordinance that appellant argued early in the hearings should apply to eliminate the Ardmore House from the separation requirement, i.e., the definitions of "facility" and "subsidized apartment housing". Those definitions support the ZHB's determination.

"Subsidized apartment housing" is defined in subsection A as a "building or complex of buildings." Plugging that definitional language into the separation requirement in subsection E requires that the ensuing word "facility" mean something other than just the building. Otherwise, the separation provision would produce a redundancy ("no building building..."). There would be no purpose for the commissioners to have included "facility" in section 50.2 at all since the concept of "building" is included in the definition of subsidized apartment housing.

More significantly, section 50.2 must be read as a whole. *Purdy v. Zoning Hearing Board of Easttown Township*, 636 A.2d 1306 (Pa.Cmwlth. 1994). The ZHB could not, as appellant would suggest, read "facility" in a vacuum to simply mean "building". That would produce the redundancy noted above. Instead, reading the entirety of section 50.2, the ZHB properly concluded that the word "facility" is in the separation provision and is separately defined so that more than one subsidized apartment building can be developed on one lot pursuant to a single land development plan. This is consistent with allowing a multi-building facility on one lot but restricting the number of such facilities in one area through Subsection E's separation requirement.

Next, as the objectors argued, appellant's proposed building cannot be used for subsidized housing without providing the surface parking, storm water management, access ramps and buffer areas that section 50.2 mandates. That is acknowledged by appellant's architect and engineer. (N.T. 8/30/07, pp. 143-144; N.T. 9/06/07, pp. 10-11). To exclude those elements from the concept of "facility" would produce an absurd result that principles of ordinance interpretation do not abide. *Stoltzfus v. Zoning Hearing Board of Eden Township*, 937 A.2d 548, 550 (Pa.

Cmwlth. 2007).

Subsection B (8) contains a distinct separation requirement for subsidized apartment buildings on the same lot. Code §155-50.2 B (8). The commissioners thus explicitly distinguished in section 50.2 between the concepts of separating buildings and separating facilities. Had they meant in subsection E to separate by 1000 feet only subsidized buildings on different lots, they would have used the term "building" as they did above in subsection B (8).

Finally, appellant's suggestion that the definition of "facility" in subsection A refers to the actual dwelling units in the proposed building would also produce an absurd result when applied to the separation provision. If indeed the definition means the dwelling units, then subsection E would require a 1000 foot separation between dwelling units, an impossibility in a multi unit building.

In reviewing the ordinance, the ZHB did not commit an error of law by interpreting subsidized apartment housing "facility" in subsection E to include all the elements that a landowner must, under subsection A(1) provide in its land development plan in order to reap the significant benefits in density and impervious surface allowed for such a facility. Based on this interpretation, appellant's facility was admittedly within 1000 feet of the Spring Avenue facility. (N.T. 8/30/07, pp. 57-58). Appellant has thus failed to demonstrate compliance with the separation provision.

Alternatively, the ZHB determined that even if the relevant measuring point under subsection E were considered to be building to building, appellant failed to produce substantial credible evidence to prove that

the distance between the nearest building in the Spring Avenue condominiums and appellant's proposed building is more than 1000 feet. Mr. Momenee testified for appellant regarding his calculation of the 1000 foot distance between the buildings. He did not use any electronic or surveying equipment to measure the actual distance. Instead, he took a copy of the township tax map and superimposed the Spring Avenue site on it. He then measured on that plan a 1000-foot line in all directions from Spring Avenue and plotted that on an amended plan for appellant's proposed use. He did not test the scale of the tax map, but then reconfigured the proposed building to be exactly 1000 feet as measured on the twice superimposed plans. (N.T. 08/30/07, pp. 56-60).

The ZHB did not abuse its discretion in finding that this method of plotting distance between buildings was not sufficient to prove precise compliance with the special exception separation criterion. Mr. Momenee himself admitted that there was a "plus or minus" in his measurement of the 1000 foot distance using only the tax map. He just did not know what the margin of error was. He concluded that his amended plan could be a "little bit" off as far as the distance is concerned. (N.T. 8/30/07, p. 60). In order to be more precise, Mr. Momenee agreed that he could have used a GPS or other electronic device to measure from the existing buildings on Spring Avenue to a specific point on the appellant's property. (N.T. 8/30/07, pp. 59-60). He did not do that.[3] Accordingly, the

---

3. Appellant argues that the ZHB's decision requires the use of a GPS device to prove compliance with the separation provision. That is not true.. The ZHB held that when an applicant makes a claim to an exact measurement of a 1000-foot distance, and then acknowledges that the methodology it used could be "a little bit" off, it has not met its burden of proving the exact distance.

undersigned concluded that the ZHB did not abuse its discretion in finding that appellant's plan based as it was on an inexact measurement, was not substantial evidence of an exact 1000 foot separation.

*Miscellaneous*

Appellant's next grouping deals with miscellaneous matters and contends that the court committed an error of law and/or abused its discretion in determining that the ZHB was not required to interpret vague and ambiguous requirements of the zoning code in favor of SW Land; by affirming the ZHB's decision, where the ZHB should have employed conditions of approval to address the claimed deficiencies rather than deny SW Land's application; by applying an improper standard of review to the issues; and the court should have employed a plenary standard of review as all of the issues involved questions of law. We disagree.

The issue of ambiguity raised here by appellant surfaced in the group of issues entitled "separation" in this document where the matter of proximity of appellant's development to the Spring Avenue condominiums, which were approved as a "subsidized apartment housing facility" under section 50.2, was raised by the township after the hearings had begun and after appellant had argued for a strict reading of the definitions section in 50.2.A. Faced mid-hearings with the fact that another section 50.2 project was indeed within 1000 feet of its planned development, appellant abandoned its precise reading of the separation provision and argued that the zoning ordinance is ambiguous and that the distance between the two facilities should be measured from "building to building" rather than from "lot line to lot line" (or from other structures

or elements on the properties). (N. T. 9/06/07, pp. 8-9). The ambiguity is non-existent. The ZHB held that the appropriate measuring distance is from the lot line to lot line. That determination was not an error of law or abuse of discretion.

Appellant relied on *Phillips v. Zoning Hearing Board of Montour Township*, 776 A.2d 341 (Pa.Cmwlth. 2001), for the proposition that separation distance must be measured from building to building. However, the court in *Philips* determined that building to building was an appropriate measure in the absence of restrictive language. In relying on *Phillips*, appellant ignores the restrictive language in the Lower Merion Township zoning ordinance that appellant had argued early in the hearings should apply to eliminate the Ardmore House from the separation requirement, i.e., the definitions of "facility" and "subsidized apartment housing." Those definitions support the ZHB's determination. Hence, the undersigned determined that the ZHB was correct in their finding that there was in fact no ambiguity.

As to appellant's contention that the court committed an error of law and/or abused its discretion by affirming the ZHB's decision, where the ZHB should have employed conditions of approval to address the claimed deficiencies rather than deny SW Land's application, this issue was previously addressed in the context of this opinion.

The Pennsylvania Supreme Court has squarely addressed the issue, holding that an applicant for a special exception can obtain approval conditioned on future compliance with zoning requirements, *but only* as long as detailed plans are submitted on which a zoning

board can base its approval. *Broussard v. Zoning Board of Adjustment of the City of Pittsburgh*, 589 Pa. 71, 84, 907 A. 2d 494, 501-502 (2006). This is not the circumstance in the case, subjudice. Here appellant was obliged to submit plans that were detailed enough to prove that the proposed project met the specific criteria in the zoning ordinance at the time of hearing, not at some time in the future, and not subject to the determination of a township administrator. appellant's plans were admittedly inadequate at the time of the hearings to prove compliance.

Finally, appellant states that the court committed an error of law and/or abused its discretion by applying an improper standard of review to the issues and suggesting that the court should have employed a plenary standard of review as all of the issues involved questions of law.

In a land use appeal, where a full and complete record was made before a zoning hearing board, and the trial court took no additional evidence, the scope of review is limited to determining whether the ZHB committed a manifest abuse of discretion or an error of law. *Centre Lime and Stone Co., Inc. v. Spring Township Board of Supervisors*, 787 A.2d 1105,1108, n.2 (Pa.Cmwlth. 2001), petition for allowance of appeal denied, 568 Pa. 740, 798 A.2d 1291 (2002). In this matter, the undersigned applied the correct standard of review. Moreover, it is the impression of the undersigned that appellant raises this contention on the assumption that the ordinance is ambiguous, which is an issue that has been dealt with at length in the body of this opinion.

Appellant requested to reserve the right to amend the foregoing upon receipt of an opinion from the court, which includes the court's rationale for affirming the ZHB's

decision. Appellant is mistaken.

Where the court orders an appellant to file a concise statement of matters complained of on appeal under Pa.R.A.P. 1925, any issues not raised in that statement are waived. *Commonwealth v. Lord*, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998).

## IV. CONCLUSION

For the foregoing reasons, the undersigned respectfully requests that the order of the trial court in affirming the decision of the Lower Merion Township Zoning Board and denying appellant's appeal should be affirmed.