IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| RUSSELL BERNER AND DONNA BERNER, KENDALL DOBBINS, NATHAN ROBERTS, ROBERTS REALTY, LLC, ROBERT D. CLARK AND ROBERT W. WEBBER | : : : : : : : : : | No. 39 MAP 2018<br><br>Appeal from the Order of the Commonwealth Court at No. 448 CD 2017 dated January 4, 2018, Reversing the Order of the Columbia County Court of Common Pleas, Civil Division, at No. 2014-CV-684 dated March 7, 2017 |
| v. | : : | |
| | : | |
| MONTOUR TOWNSHIP ZONING HEARING BOARD AND SCOTT SPONENBERG | : : : : : | ARGUED:  March 5, 2019 |
| APPEAL OF: SCOTT SPONENBERG | : | |

## OPINION

**JUSTICE BAER**                                                    **DECIDED:  September 26, 2019**

The Nutrient Management Act (Act), 3 Pa.C.S. §§ 501-522, requires certain agricultural operations to comply with various standards regarding the management of livestock manure, among other "nutrients."[1]  The Act also contains a provision outlining the manner in which the Act, as well as the regulations and guidelines promulgated pursuant to it, preempt local regulation of nutrient management.  *See id.* § 519, *infra* at page 4.  In this appeal, we are tasked with determining whether, and if so, to what extent,

---

[1] *See* 3 Pa.C.S. § 503 (defining "nutrient" to include livestock manure); *see also* 25 Pa. Code § 83.201 (same).  We further note that the Act contains provisions relating to odor management, which are not at issue in this appeal and thus will not be addressed herein.

the Act preempts local regulation of nutrient management by agricultural operations that are not otherwise subject to the Act's requirements. For the reasons discussed below, we hold that the Act preempts local regulation of agricultural operations not subject to the Act's requirements to the extent that the local regulation is more stringent than, inconsistent with, or in conflict with those requirements. Because the Commonwealth Court reached a contrary result, we reverse the order of that court.

## I. Legal Background

## A. State Law

In order to facilitate a better understanding of the issue before us, we begin by expanding upon our brief statements on the Act made above. At the heart of the Act is the mandate that certain agricultural operations adopt a "nutrient management plan" or "NMP." *See Burkholder v. Zoning Hearing Bd. of Richmond Twp.*, 902 A.2d 1006, 1008 (Pa. Cmwlth. 2006) (observing that "[t]he preparation and implementation of [an NMP] is the centerpiece" of the Act). An NMP is "[a] written site-specific plan which incorporates best management practices to manage the use of plant nutrients for crop production and water quality protection consistent with the criteria established in [certain sections of the Act]." 3 Pa.C.S. § 503.

Under the Act, operators of "concentrated animal operations" or "CAOs" must develop and implement an NMP.[2] *Id.* § 506(b). In contrast, smaller agricultural operations

---

[2] The definition of what constitutes a CAO is rather technical, but it suffices to say that they are larger, higher intensity agricultural operations. *See* 3 Pa.C.S. § 503 (defining CAO as "[a]gricultural operations meeting the criteria established under this chapter"); *id.* § 506(a) (providing a definition for CAOs while further requiring review of the criteria used to identify CAOs and the making of appropriate changes to the definition by regulation); 25 Pa. Code § 83.201 (defining CAOs as "[a]gricultural operations with eight or more animal equivalent units [(AEUs), defined as 1,000 pounds live weight of livestock or poultry animals, regardless of the actual number of animals, 3 Pa.C.S. § 503; *see also* 25

that are not intensive enough to meet the definition of a CAO may develop an NMP voluntarily.[3]  *Id.* § 506(h).  Non-CAOs that have voluntarily submitted an NMP are called "voluntary agricultural operations" or "VAOs." 25 Pa. Code § 83.201 (defining VAO, in relevant part, as "[a]ny operation that voluntarily agrees to meet the requirements of this subchapter even though it is not otherwise required under the [A]ct or this chapter to submit a nutrient management plan").  "CAOs, VAOs and operations required to develop compliance plans under section 506(j) of the [A]ct" are collectively referred to as "NMP operations."  *Id.*

NMP operations must meet the NMP requirements set forth in various regulations promulgated pursuant to the Act.  *Id.* § 83.261.  Among these regulations is the one at the center of this dispute, Section 83.351, which provides "[t]he minimum standards [for] new manure storage facilities and the expansion of existing manure storage facilities, as part of a plan developed for an NMP operation."  *Id.* § 83.351(a).  While these standards need not be set forth in detail for purposes of this appeal, it is worthwhile to note that they are aimed at protecting water quality and preventing migration of nutrients offsite.  *See, e.g.*, *id.* § 83.351(a)(1) (explaining that "[m]anure storage facilities shall be designed, constructed, located, operated, maintained, and, if no longer used for the storage of manure, removed from service, in a manner that protects surface water and groundwater quality, and prevents the offsite migration of nutrients").

---

Pa. Code § 83.201,] where the animal density exceeds two AEUs per acre on an annualized basis").

[3] Section 506(j) of the Act provides an exception to this general proposition: "Any agricultural operation found to be in violation of the act of June 22, 1937 (P.L. 1987, No. 394), known as The Clean Streams Law, may be required to submit a nutrient management plan within three months of notification thereof and implement the plan in order to prevent or abate such pollution."  3 Pa.C.S. § 506(j) (footnote omitted).  Thus, in limited circumstances, it is possible that non-CAOs would have to submit an NMP.

With respect to preemption, Section 519 of the Act sets forth the preemptive effect the Act, its regulations, and its guidelines have on local regulation of nutrient management. Section 519 provides, in relevant part, as follows:

> **(a) General.--**This chapter and its provisions are of Statewide concern and occupy the whole field of regulation regarding nutrient management … to the exclusion of all local regulations.
>
> **(b) Nutrient management.--**No ordinance or regulation of any political subdivision or home rule municipality may prohibit or in any way regulate practices related to the storage, handling or land application of animal manure or nutrients or to the construction, location or operation of facilities used for storage of animal manure or nutrients or practices otherwise regulated by this chapter if the municipal ordinance or regulation is in conflict with this chapter and the regulations or guidelines promulgated under it.
>
> ***
>
> **(d) Stricter requirements.--**Nothing in this chapter shall prevent a political subdivision or home rule municipality from adopting and enforcing ordinances or regulations which are consistent with and no more stringent than the requirements of this chapter and the regulations or guidelines promulgated under this chapter. No penalty shall be assessed under any such local ordinance or regulation under this subsection for any violation for which a penalty has been assessed under this chapter.

3 Pa.C.S. § 519.[4] We must determine whether, pursuant to Section 519, the Act and its attendant regulations and guidelines preempt the local ordinance at issue here, discussed below.

---

[4] While not cited by the parties or the lower tribunals, the Act's regulations also include a preemption provision. Section 83.205 of the Act's regulations provides:

> (a) The act and this subchapter are of Statewide concern and occupy the whole field of regulation regarding nutrient management to the exclusion of all local regulations.
>
> (b) After October 1, 1997, no ordinance or regulation of any political subdivision or home rule municipality may prohibit or in any way regulate practices related to the storage, handling or land application of animal manure or nutrients or to the construction, location or operation of facilities

B. Local Law

The municipality involved in this dispute is Montour Township (Township), Columbia County. The Township has a zoning ordinance (Ordinance) under which the Township has been divided into different districts, including agricultural districts. Montour Township, General Codes, Ch. 27 (Zoning), § 300(1). The Ordinance further permits several "Intensive Agriculture and Agricultural Support" uses, including "hog raising," in agricultural districts by special exception.[5] *Id.* §§ 401(3), 402(1)(E). While the Ordinance sets forth various criteria an applicant must meet to obtain special exception approval for hog raising, the criterion most relevant to this appeal requires the applicant to:

> submit facility designs and legally binding assurances with performance guarantees which demonstrate that all facilities necessary for manure and wastewater management, materials storage, water supply and processing or shipping operations will be conducted without adverse impact upon adjacent properties.

*Id.* § 402(1)(E) (further explaining that "adverse impacts may include, but are not limited to, groundwater and surface water contamination, groundwater supply diminution, noise,

---

used for storage of animal manure or nutrients or practices otherwise regulated by the act or this subchapter if the municipal ordinance is in conflict with the act and this subchapter.

(c) Nothing in the act or this subchapter prevents a political subdivision or home rule municipality from adopting and enforcing ordinances or regulations which are consistent with and no more stringent than the requirements of the act and this subchapter.

(d) No penalty will be assessed under any valid local ordinance or regulation for any violation for which a penalty has been assessed under the act or this subchapter.

25 Pa. Code § 83.205.

[5] "[A] special exception … is a use which is expressly permitted in a given zone so long as certain conditions detailed in the ordinance are found to exist." *Broussard v. Zoning Bd. of Adjustment of City of Pittsburgh*, 907 A.2d 494, 499 (Pa. 2006).

dust, odor, heavy truck traffic, and migration of chemicals offsite").[6]  While the Ordinance contains this adverse impact requirement, it is undisputed that there is no such requirement contained in the Act or its regulations.  It is this circumstance that forms the basis of the dispute herein.

## II.  Factual Background and Procedural History

Scott Sponenberg (Applicant) owns property used as a livestock and crop farm that lies in an agricultural district in the Township.  In April 2013, Applicant filed an application for a special exception with the Montour Township Zoning Hearing Board (ZHB) based on his desire to build a swine nursery barn with under building concrete manure storage (*i.e.*, a manure storage facility) on his property.  Notably, Applicant's proposed use does not constitute an NMP operation, as it does not meet the criteria of an agricultural operation that is required to have an NMP, and Applicant has not voluntarily created an NMP for his proposed use.  Thus, Applicant's planned use is not subject to the various requirements established under the Act, which apply to NMP operations.

A prolonged procedural history involving litigation of various issues, most of which are irrelevant to this appeal, followed the filing of the special exception application.  In short, the ZHB initially granted Applicant's special exception application subject to conditions.  Following two appeals filed by various objectors, including Russell Berner, Donna Berner, Kendall Dobbins, Robert D. Clark, and Robert W. Webber (Objectors), the matter returned to the ZHB by way of order from the Commonwealth Court for the ZHB to render necessary findings regarding Applicant's compliance with the Ordinance's special exception requirements.

---

[6] We will refer to this requirement as the "adverse impact requirement" throughout this Opinion.

On remand, the ZHB permitted the parties to file proposed findings of fact and conclusions of law, and it ultimately adopted those submitted by Applicant. Included in the findings and conclusions were determinations regarding the preemptive effect of the Act and its regulations on the Ordinance's adverse impact requirement. Specifically, the ZHB observed that the Act's regulations comprehensively set forth the standards regarding the design, construction, location, operation, and maintenance of manure storage facilities. The ZHB further explained that those regulations, and Section 83.351 in particular, do not include an adverse impact requirement as the Ordinance does. Relying upon Subsection 519(b), part of the Act's preemption provision, *supra* at page 4, and making no distinction between NMP and non-NMP operations, the ZHB thus concluded that the adverse impact requirement was more restrictive than, and in conflict with, the Act and its regulations. As a consequence, the ZHB concluded that the Act and its regulations preempted the Ordinance's adverse impact requirement, rendering it unnecessary for Applicant to comply with that requirement.

Objectors appealed, and the trial court affirmed the ZHB's decision without taking additional evidence. Objectors further appealed to the Commonwealth Court, which concluded in a unanimous, published opinion that the ZHB erred in finding the Ordinance's adverse impact requirement preempted by the Act and its regulations. *Berner v. Montour Twp. Zoning Hearing Bd.*, 176 A.3d 1058, 1078 (Pa. Cmwlth. 2018). The Commonwealth Court first observed that, under Subsection 519(a) of the Act, the General Assembly clearly intended to occupy the whole field of nutrient management. *Id.* at 1077 (quoting *Office of Atty. Gen. ex rel. Corbett v. Locust Twp.,* 49 A.3d 502, 506 (Pa. Cmwlth. 2012)). The court further explained that, under Subsections 519(b) and (d), the Act prohibits local regulation that conflicts with the Act, its regulations, and its guidelines,

but allows local regulation that is consistent with and no more stringent than the state law. *Id.* (quoting *Locust Twp.,* 49 A.3d at 506-07).

Turning to the facts of this case, the Commonwealth Court reasoned that Section 83.351 applies only to certain manure storage facilities that are "part of a plan developed for an NMP operation."[7]   *Id.* at 1078 (quoting 25 Pa. Code § 83.351(a)).   The Commonwealth Court reasoned that Applicant's proposed use was not an NMP operation, as it did not have a mandatory or voluntary NMP; thus, the court concluded that Section 83.351 was inapplicable to the proposed use.   According to the Commonwealth Court, because Section 83.351 did not apply to Applicant's proposed use, it was subject to the Ordinance's adverse impact requirement.   In other words, the Court concluded that the Act and its regulations did not preempt the Ordinance's adverse impact requirement under the circumstances presented, where there was no NMP subjecting Applicant's use to the state law requirements.   Accordingly, and for other reasons not relevant to this appeal, the Commonwealth Court reversed the trial court's decision affirming the ZHB's grant of Applicant's special exception application.   Applicant then filed a petition for review with this Court.

## III. Issue

We granted discretionary review to address the following question, as stated by Applicant:

> Whether the Commonwealth Court erred by holding that the [Act] only preempts local ordinances as applied to farms that have an approved [NMP] and that small farms that are not required to submit [NMPs] can be subjected to more stringent regulation than larger more intensive agricultural operations that are required to obtain approval of a[n NMP] under the [Act].

*Berner v. Montour Twp. Zoning Hearing Bd.*, 190 A.3d 593 (Pa. 2018) (*per curiam*).

---

[7] Again, NMP operations are those operations that have an NMP, whether mandatory or voluntary, in place.  *See supra* at pages 2-3.

IV. Analysis

A. Standard of Review

The issue before us requires us to engage in statutory interpretation. An issue of statutory interpretation presents a question of law for which our standard of review is *de novo* and our scope of review is plenary. *Thomas Jefferson Univ. Hosps., Inc. v. Pa. Dep't of Labor & Indus.*, 162 A.3d 384, 389 (Pa. 2017). We are guided in our analysis by the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991, which provides that the object of all statutory interpretation is to ascertain and effectuate the intent of the General Assembly. *Id.* § 1921(a). Generally, a statute's plain language provides the best indication of legislative intent. *Miller v. County of Centre*, 173 A.3d 1162, 1168 (Pa. 2017). When the statutory language is ambiguous, however, we look to the various factors listed in 1 Pa.C.S. § 1921(c) to ascertain its meaning. *LTV Steel Co. v. Workers' Comp. Appeal Bd. (Mozena)*, 754 A.2d 666, 674 (Pa. 2000). Further, in matters of statutory interpretation, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). We also presume that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable," and that "the General Assembly intends the entire statute to be effective and certain." *Id.* § 1922(1)-(2).

B. Arguments

Applicant argues that the Act preempts the Township's attempt to regulate nutrient management through the Ordinance.[8] With respect to the Act's preemption provision,

---

[8] The Commonwealth of Pennsylvania has filed an *amicus curiae* brief in support of Applicant. While the Commonwealth agrees with the Commonwealth Court's characterization of the Act's preemption framework as prohibiting local regulation to the extent that it is more strict than or inconsistent with the Act, the Commonwealth argues that the court incorrectly applied that framework in this case, advancing and expanding upon many of the arguments made by Applicant in support of its position.

The Pennsylvania Farm Bureau and PennAg Industries Association have also filed an *amici curiae* brief on behalf of Applicant. In furthering the arguments made by

Applicant contends that the Act expressly and unambiguously preempts the field of nutrient management to the exclusion of all other local regulation pursuant to Subsection 519(a). While the Act does not define "nutrient management," Applicant argues that the General Assembly intended the term to mean "anything regulating the manner or method that manure is managed," and encompass the land application and storage of animal manure and related activities. Applicant's Brief at 25, 28 (relying upon the Act's definition of "nutrient," *supra* at page 1 n.1, and "best management practice").[9] Applicant further reads Subsections 519(b) and (d) to reserve the ability of municipalities to adopt ordinances and regulations concerning zoning and land use matters traditionally in its purview, or what Applicant calls "non-operational and non-nutrient aspects" of a proposed manure management operation, provided that there is no conflict with the Act.[10] *Id.* at 29. Applicant argues that the Ordinance is preempted because it both regulates nutrient management and otherwise conflicts with the Act.

---

Applicant, these organizations highlight the challenges faced by Pennsylvania's farm families in sustaining their agricultural operations. *Amici* also note the burdens imposed upon both smaller agricultural operations and the Act's compliance system should the Commonwealth Court's decision stand, given that it would require those operations to submit voluntary NMPs in order to receive preemption protection under the Act.

[9] The Act defines "best management practice" as "[a] practice or combination of practices determined by the [State Conservation Commission] to be effective and practicable … to manage nutrients to protect surface and ground water." 3 Pa.C.S. § 503; *see also* 25 Pa. Code § 83.201 (same). The Act's definition includes a non-exhaustive list of items such as manure storage facilities. 3 Pa.C.S. § 503.

[10] As examples of permitted local regulation, Applicant posits that municipalities can determine the location of zoning districts, the appropriate zoning districts where agricultural uses can be located, and whether such uses would be permitted as of right or upon special exception, so long as the municipality's action is not in conflict with the Act. Applicant's Brief at 29. While Applicant's argument is less than clear as it relates to concepts of field and conflict preemption, it is unnecessary for our purposes to discern its exact nature.

Applicant additionally claims that, through the enactment of various statutes, the General Assembly has created a comprehensive system of state regulation governing all agricultural operations and the field of nutrient management. According to Applicant, these statutes include the Act, as well as the Clean Streams Law, 35 P.S. §§ 691.1-691.1001; the Agricultural Area Security Law, 3 P.S. §§ 901-915; the Right to Farm Act, 3 P.S. §§ 951-957; and the Municipalities Planning Code (MPC), 53 P.S. §§ 10101-11202. Applicant contends that the Act should be read *in pari materia* with these statutes, which were all enacted to protect Pennsylvania's agricultural operations from unreasonable local regulation and provide uniform standards throughout the state. Applicant's Brief at 19-24 (relying upon 3 Pa.C.S. § 521 (providing, in relevant part, that the Act "shall not be construed as modifying, rescinding or superseding any other statute … and shall be read in pari materia with other statutes")). Applicant contends that preemption plays an integral role in advancing these purposes.

Applicant also argues that the Commonwealth Court erred in holding that the Act and its regulations did not preempt the Ordinance's adverse impact requirement because Applicant's farm lacked an approved NMP. Applicant contends that the Commonwealth Court's interpretation would allow local regulation of nutrient management and the imposition of more burdensome restrictions on lower intensity agricultural operations like Applicant's that are not required to submit an NMP than the Act imposes on higher intensity agricultural operations.

Applicant claims that the General Assembly did not intend for lower intensity agricultural operations, which make up the vast majority of agricultural operations in the Commonwealth, to face more stringent regulation than larger agricultural operations subject to the Act's requirements. Applicant argues that the Commonwealth Court's interpretation goes against the Legislature's intent to create a statewide ceiling for

regulation of nutrient management, does not give effect to all of Section 519's provisions, and permits the Township to exceed the traditional scope of zoning by allowing it to regulate the operational details of manure management facilities.

Finally, Applicant contends that the Commonwealth Court's decision is not supported by case law. Applicant's Brief at 39-45 (relying upon, *inter alia*, *Locust Twp.*, 49 A.3d at 510-12 (Pa. Cmwlth. 2012) (explaining that the distinction between larger and smaller farms made by the Legislature in the Act was intentional and finding preemption of a local setback requirement because, *inter alia*, it applied to small farms that were excluded from the Act's lesser setback requirements)).

Objectors counter that this case is to be analyzed under principles of conflict preemption, which requires Applicant to demonstrate an irreconcilable conflict between the Act and the adverse impact requirement of the Ordinance, making it impossible to comply with both. Objectors argue that Applicant fails to identify such a conflict. Objectors further assert that the Commonwealth Court correctly found no preemption on the basis that Applicant's proposed use lacked an NMP, rendering the requirements of the Act and its regulations inapplicable to it. Objectors claim that, if Applicant wants the benefit of preemption protection under the Act, then he may file a voluntary NMP.

Objectors additionally challenge Applicant's claim that the Ordinance's adverse impact requirement is more restrictive than Section 83.351 of the Act's regulations and goes beyond the permissible scope of zoning by imposing specific substantive requirements and regulating operational details of manure storage facilities. Further, Objectors argue that interpreting the Act *in pari materia* with other statutes pertaining to agricultural operations does not change the outcome in this case, as there is likewise no conflict between the adverse impacts requirement of the Ordinance and those statutes. Finally, Objectors argue that the Commonwealth Court's decision in this case is

consistent with precedent from that court. Objector's Brief at 30-34 (citing, *inter alia*, *Locust Twp.,* 49 A.3d at 508-09 (concluding that an ordinance's requirement that an applicant for land use approval submit a site plan was not preempted by the Act, which mandated that site plans be included with NMPs, on the basis that the requirements served different purposes and the ordinance did not regulate nutrient management); *Walck v. Lower Towamensing Twp. Zoning Hearing Bd.*, 942 A.2d 200, 207-08 (Pa. Cmwlth. 2008) (holding that, in the absence of an NMP, the Act and its regulations did not apply to preempt the local ordinance at issue)).

## C. Discussion

Generally, this Court has discussed preemption in terms of three forms: (1) express preemption, (2) conflict preemption, and (3) field preemption. *See, e.g.*, *Nutter v. Dougherty*, 938 A.2d 401, 404 (Pa. 2007). With express preemption, "the state enactment contains language specifically prohibiting local authority over the subject matter." *Huntley & Huntley, Inc. v. Borough Council of Borough of Oakmont*, 964 A.2d 855, 863 (Pa. 2009).[11] Here, the Act contains an express preemption provision, Section 519, the relevant portions of which we set forth again here:

> **(a) General.--**This chapter and its provisions are of Statewide concern and occupy the whole field of regulation regarding nutrient management … to the exclusion of all local regulations.
>
> **(b) Nutrient management.--**No ordinance or regulation of any political subdivision or home rule municipality may prohibit or in any way regulate practices related to the storage, handling or land application of animal manure or nutrients or to the construction, location or operation of facilities used for storage of animal manure or nutrients or practices otherwise regulated by this chapter if the municipal ordinance or regulation is in

---

[11] Conflict preemption "acts to preempt any local law that contradicts or contravenes state law." *Nutter*, 938 A.2d at 404. As for field preemption, "the state regulatory scheme so completely occupies the field that it appears the General Assembly did not intend for supplementation by local regulations." *Huntley*, 964 A.2d at 863.

conflict with this chapter and the regulations or guidelines promulgated under it.

*** 

**(d) Stricter requirements.--**Nothing in this chapter shall prevent a political subdivision or home rule municipality from adopting and enforcing ordinances or regulations which are consistent with and no more stringent than the requirements of this chapter and the regulations or guidelines promulgated under this chapter. No penalty shall be assessed under any such local ordinance or regulation under this subsection for any violation for which a penalty has been assessed under this chapter.

3 Pa.C.S. § 519.[12]

In Subsection 519(a), the General Assembly states its intent for the Act to occupy the entire field of regulation regarding nutrient management to the exclusion of all local regulations. Read in isolation, this provision appears to indicate that the General Assembly intended to prohibit all local regulation of nutrient management. In engaging in statutory interpretation, however, this Court is to give effect to every provision in a statute whenever possible, as it is presumed "that the legislature did not intend any statutory language to exist as mere surplusage." *Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1034 (Pa. 2018). Thus, we turn to Subsection (b), which provides that municipalities are barred from regulating practices related to, *inter alia*, the storage of animal manure, the construction of facilities used for storage of animal manure, and practices otherwise regulated by the Act to the extent the local regulation is in conflict with the Act or its regulations. Further, under Subsection (d), municipalities are permitted to adopt regulations to the extent that they are consistent with and no more stringent than the requirements of the Act and its regulations.

Taken together, the provisions of Section 519 of the Act do not evidence an intent on behalf of the Legislature to preclude all local regulation in the field of nutrient

---

[12] *See also* 25 Pa. Code § 83.205 of the Act's regulations, *supra* at pp. 4-5, n.4.

management. Instead, viewed in its entirety, Section 519 of the Act reveals the Legislature's intent to prohibit local regulation of nutrient management only to the extent that it is more stringent than, inconsistent with, or in conflict with the Act or its regulations.[13] Thus, we agree with the Commonwealth Court's analysis as to Section 519 of the Act's preemption framework. We therefore proceed to address that court's application of that framework to the Ordinance's adverse impact requirement.

As stated previously, the Ordinance's adverse impact requirement mandates that applicants seeking a special exception for hog raising "submit facility designs and legally binding assurances with performance guarantees which demonstrate that all facilities necessary for manure and wastewater management, materials storage, water supply and processing or shipping operations will be conducted without adverse impact upon adjacent properties." Montour Township, General Codes, Ch. 27 (Zoning), § 402(1)(E). As determined by the ZHB, Section 83.351 of the Act's regulations, which sets forth the minimum standards for manure storage facilities, does not impose this adverse impact requirement on those facilities. By imposing these obligations, which clearly regulate nutrient management and are in addition to those set forth in the Act and its regulations, the Ordinance's adverse impact requirement is in conflict with the Act and its regulations. Accordingly, under Section 519 of the Act, the Act and its regulations preempt the Ordinance's adverse impact requirement.

In reaching its contrary conclusion, the Commonwealth Court reasoned that the Ordinance's adverse impact requirement was not preempted under the circumstances

---

[13] It is worth noting that the Act and its regulations do not define "nutrient management." However, we find that the term clearly encompasses the activities listed in Subsection 519(b) of the Act, namely, "practices related to the storage, handling or land application of animal manure or nutrients or to the construction, location or operation of facilities used for storage of animal manure or nutrients or practices otherwise regulated by" the Act. 3 Pa.C.S. § 519(b).

presented because Applicant's use, in any case, is not an NMP operation subject to the requirements set forth in the Act and its regulations. In so doing, the Commonwealth Court determined that because non-NMP operations like Applicant's proposed use are free from the requirements imposed pursuant to the Act, they do not get the benefit of the Act's preemption protection. We conclude that this determination is in contravention of the legislative intent underpinning the Act and, thus, respectfully, was made in error.

One of the purposes for which the Legislature enacted the Act was to "establish criteria, nutrient management planning requirements and an implementation schedule for the application of nutrient management measures on certain agricultural operations which generate or utilize animal manure." 3 Pa.C.S. § 502(1). In furtherance of this purpose, the Act and its regulations impose nutrient management requirements on NMP operations, those being CAOs, VAOs, and operations otherwise required to implement NMPs under Subsection 506(j) of the Act. *See* 3 Pa.C.S. § 506(b); 25 Pa. Code §§ 83.201, 83.261. In contrast, the Act does not impose those requirements on non-NMP operations, but rather gives them the choice to comply with the requirements through submission of a voluntary NMP. *See* 3 Pa.C.S. § 506(h).[14]

As the Commonwealth Court aptly explained in *Locust Township,* "[t]he reason for the distinction is obvious" given that the development and implementation of NMPs is costly and burdensome, circumstances readily recognized by the Legislature.[15] *Locust*

---

[14] Notably, there are incentives to implementing a voluntary NMP, including its use "as a mitigating factor in any civil action for penalties or damages alleged to have been caused by the management or utilization of nutrients … pursuant to the implementation." 3 Pa.C.S. § 515.

[15] In *Locust Township*, the Commonwealth Court was tasked with determining whether the Act preempted various provisions of a local ordinance. Most importantly, the court in *Locust Township* found a setback requirement in the local ordinance to be preempted by the Act because, *inter alia*, the local requirement exceeded the maximum setback requirement provided in the Act for CAOs and "applie[d] to farming operations that the

*Twp.*, 49 A.3d at 511 (further observing that "[t]he cost of compliance appears to have been such a significant concern to the General Assembly that it expressly authorized the [State Conservation Commission] to provide financial assistance … to existing agricultural operations to implement the mandated plans"); *see* also 3 Pa.C.S. § 511 (relating to the provision of financial assistance for implementation of NMPs); *id.* § 502(3) (requiring the State Conservation Commission and other entities "to develop and provide … financial assistance for nutrient management" as another purpose of the Act).[16]  Thus, like the *Locust Township* court, we view the Legislature's distinction between NMP operations and non-NMP operations to be a deliberate one made for purposes of sparing lower-intensity non-NMP operations from the complex and expensive burden of adoption of an NMP.  *See Locust Twp.*, 49 A.3d at 511.

In light of the Legislature's intent to spare non-NMP operations from mandatory compliance with the onerous requirements imposed pursuant to the Act, it would indeed be ironic if we found no preemption to exist under the circumstances presented, thus permitting local municipalities to impose upon small agricultural operations standards more burdensome than those placed upon large agricultural operations under the Act. This "irony" runs afoul of basic principles of statutory construction.  A finding of no preemption would be unreasonable, if not absurd, and would in fact defeat the legislative purpose of establishing statewide criteria which simultaneously protects the public and encourages this important agrarian industry to thrive in Pennsylvania.

---

General Assembly has deemed to be so small as to justify their exclusion from the lesser [Act] setback requirements for larger farming operations." *Locust Twp.*, 49 A.3d at 512. Thus, contrary to the holdings by the Commonwealth Court both in this case and in *Walck*, *supra* at page 13, the Commonwealth Court in *Locust Township* did not base its preemption determination on whether smaller farms subject to the local ordinance had an NMP.

[16] The Act's regulations also include various provisions relating to financial assistance for implementing NMPs.  *See* 25 Pa. Code §§ 83.221-83.233.

Accordingly, we hold with little difficulty that Section 519 of the Act provides preemption protection from local regulation to both NMP operations subject to the Act's requirements as well as non-NMP operations that are free from them. More specifically, we conclude that the Act preempts any local regulation of nutrient management to the extent the local regulation imposes requirements that are stricter than, inconsistent with, or in conflict with the state law requirements, irrespective of whether a particular agricultural operation has an NMP mandating compliance with the Act.[17] Here, as discussed *supra*, the Ordinance's adverse impact requirement is inconsistent with the state law requirements because it imposes obligations that are in addition to those included in the Act and its regulations. That is, the Ordinance's adverse impact requirement imposes additional requirements on both NMP operations subject to the state law requirements and non-NMP operations that the Legislature has deemed to be exempt from those lesser requirements. Therefore, the Act and its regulations preempt the Ordinance's adverse impact requirement.[18]

---

[17] We reiterate that the Act provides that it "shall be read in pari materia with other statutes." 3 Pa.C.S. § 521. In this regard, Subsection 10603(b) of the MPC provides that zoning ordinances may regulate the location and construction of structures, *inter alia*, except to the extent "that regulation of activities related to commercial agricultural production would exceed the requirements imposed under [the Act] regardless of whether any agricultural operation within the area to be affected by the ordinance would be a" CAO. 53 P.S. § 10603(b). Thus, our conclusion is further supported by the MPC.

[18] The dissent suggests that our decision today prohibits any local regulation of nutrient management by lower-intensity non-NMP operations. *See, e.g.*, Dissenting Op. at 2. Respectfully, that is not the case. As explained herein, we hold that the Act preempts local regulation of nutrient management by those operations to the extent that the local regulation is more stringent than, inconsistent with, or in conflict with the Act's requirements. To be clear, nothing in our decision prohibits a municipality from regulating lower intensity non-NMP operations outright.

With respect to the particular local provision at issue here, the dissent concludes that Subsection 402(1)(E)'s adverse impact requirement is not in conflict with and thus preempted by the Act because, *inter alia*, it does not impose standards more onerous than those contained in the Act for NMP operations and presents no obstacle to the

Based on the foregoing, we respectfully disagree with the Commonwealth Court's conclusion that Applicant was required to comply with the Ordinance's adverse impact requirement because the Act and its regulations did not preempt that requirement. Accordingly, we reverse the order of the Commonwealth Court.

Chief Justice Saylor and Justices Todd, Donohue, Wecht and Mundy join the opinion.

Justice Dougherty files a dissenting opinion.

---

execution of any legislative purpose behind the Act. *Id.* at 8-10. We disagree. The Act's mandates are indeed onerous, a point the dissent does not dispute, and yet they do not require larger, higher-intensity agricultural operations and other NMP operations to submit "legally binding assurances with performance guarantees" demonstrating that manure storage facilities "will be conducted without adverse impact upon adjacent properties" as Subsection 402(1)(E) does. Given the Legislature's objective to spare lower-intensity non-NMP operations from the burden of mandatory compliance with the Act's onerous requirements, allowing municipalities to impose obligations that go beyond those requirements, in our view, clearly presents an obstacle to that objective. Further, given that the imposition of the adverse impact requirement alone is an obstacle to that objective, contrary to the dissent's position, Applicant need not attempt to comply with that local requirement to demonstrate that he is entitled to protection of the Act's preemption provision.